UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY BROWN BLACK** | **CIVIL ACTION** |
| **VERSUS** | **NO:  14-2724** |
| **CAROLYN W. COLVIN**<br>**ACTING COMMISSIONER OF SOCIAL**<br>**SECURITY ADMINISTRATION** | **SECTION: "N" (4)** |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **Title 42 U.S.C. § 405(g)**. The Commissioner denied Mary Brown Black's *Pro se* claim for Disability Insurance Benefits and Supplemental Security Income Benefits under Title XVI of the Social Security Act, **Title 42 U.S.C. § 1382c**. Black retained counsel to assist her with the review of the claim.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### II.   Factual Summary

The claimant, Mary Brown Black ("Black"), is a fifty-one-year-old woman with an eleventh grade education and past work experience as a fry cook, fast food manager, poultry eviscerator, cashier, and cook. (Tr. 300).  She contends that she has been disabled since February 7, 1991, because of cataracts in both eyes, high blood pressure, diabetes, a stent in her heart and neuropathy in her hands and feet.  (Tr. 222).  On April 23, 2012, Black filed an application for

Disability Insurance Benefits and on May 8, 2012, an application for Supplemental Security Income Benefits. (Tr. 274-286) On August 3, 2012, her claims were denied at the initial level. (Tr. 222-229) Thereafter, on October 10, 2012, Black requested a hearing with an Administrative Law Judge ("ALJ"). (Tr. 246-247).

On September 26, 2013, Administrative Law Judge Timothy Stewart issued a decision denying Black's claim for benefits. (Tr. 146-161). The ALJ found that Black met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since March 2, 2011, the alleged onset date. (Tr. 151) He also found that Black had the following severe impairments: coronary artery disease, coronary atherosclerosis, diabetes, peripheral neuropathy, hypertension, and obesity. (Id.) At Step 4, he held that Black did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404. (Tr. 152) He further held that at Step 5 Black has the residual functional capacity ("RFC") to perform sedentary work except that she can only occasionally climb ramps or stairs and can never climb ladders, ropes, or scaffolds. The ALJ further held that Black can frequently balance, stoop, and kneel; and can occasionally crouch and crawl. (Id.)

The ALJ further held that Black is unable to perform past, relevant work and that she was a younger individual age 45-49, on the alleged disability date. (Tr. 155-156) The ALJ further held that Black has a limited education, is able to communicate in English, and that the Medical Vocational Rules supported a finding that Black was not disabled. (Id.) Finally, the ALJ held that considering Black's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Black can perform. (Id. at. 156)

On October 22, 2014, the Appeals Council denied Black's request for review of the ALJ's decision. (Tr. 1-7). Therefore, the ALJ's decision became the final decision of the Commissioner pursuant to Title 42 U.S.C. § 405(g).

On December 1, 2014, Black filed a complaint in this Court, seeking review of the Administrative Law Judge's findings. The Social Security Administration ("SSA") answered and filed a timely opposition to Black's claim for relief.

### III. Issues

The issues presented for review on appeal are:

1. Whether the ALJ's opinion is based on substantial evidence when he concluded that Black does not meet a Listing Level 4.12 for peripherals artery disease when the medical evidence contains evidence supporting a finding

2. Whether substantial evidence supports the ALJ's finding that there were no visual limitations and whether he failed to fully and fairly develop the record regarding her visual impairments

3. Whether substantial evidence supports the ALJ's credibility and residual functional capacity findings

### IV. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo,* or substitute its judgment for that of the Commissioner. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion.  *See Richardson*, 402 U.S. at 401.  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence."  *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a constructive period of not less than twelve months."  *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).  Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.  The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his

4

impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**V.    Analysis**

   **A.    Whether the ALJ's opinion is based on substantial evidence when he concluded that Black does not meet a Listing Level 4.12 for peripherals artery disease when the medical evidence contains evidence supporting a finding**

Black contends that the evidence of record satisfied the Listing Level requirement 4.12. Black contends that the ALJ merely asserted that the medical evidence did not meet the criteria of any of the impairments listed at 2.00, 4.00, 9.00, and 11.00 without identifying the specific, applicable listings and without discussing the evidence. Black contends therefore that the ALJ's opinion that Black did not meet Listing Level 4.12 is not based on substantial evidence.

The Commissioner contends that the ALJ considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulation and found that she did not meet either singularly or in combination the listing level requirements of various listings. The Commissioner contends that even if the ALJ erred in his discussion of the listings, the Court must determine whether the ALJ's error was harmless. (Rec. Doc. 13, p. 8)

The ALJ according to his opinion concluded that Black's impairments and the medical evidence did not document listing-level severity and that no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment. The ALJ further held that because Black provided no evidence of impairment she failed to establish that

5

she was disabled. Noticeably absent is any reference to the medical evidence the ALJ relied on reaching the decision.

The ALJ erred in his opinion because he failed to consider evidence of Black's systolic blood pressure. However, the error was harmless. The Court notes that Black submitted evidence supporting Listing 4.12 which requires an appropriate medically acceptable imaging causing intermittent claudication and a resting ankle/brachial systolic blood pressure ratio of less than 0.50. (Rec. Doc. 12)

The evidence showed that she had intermittent claudication (calf pain with walking, relieved by rest) in December 2012 through March 2013, three months, and foot pain so severe that she could barely walk and could not sleep. (Tr. 688)   The evidence indicates therefore that her condition lasted less than a year.  While the medical record also indicates that she underwent surgery and there is evidence that the surgery was successful, it is unclear that her Ankle Brachial Index improved. The evidence shows that she continued to receive treatment for peripheral artery disease ("PAD") and that claudication remained an issue but there is no further information evidencing that after the surgery, her resting ankle/brachial systolic blood pressure ratio remained less than .50. Consequently, the Court finds that the ALJ's finding that Black did not meet Listing Level 4.2 is based on substantial evidence.

> **B.      Whether substantial evidence supports the ALJ's finding that there were no visual limitations and whether he failed to fully and fairly develop the record regarding her visual impairments**

Black next contends that after she underwent cataract surgery, she continued to experience visual impairments which the ALJ ignored. Black contends that the ALJ erred when he concluded that she had no visual limitations. Black contends that the ALJ only referenced her diagnosis of cataract which was not the only visual complication that she experienced.

6

The Commissioner contends that the ALJ's decision that Black had no severe visual limitation is based on substantial evidence.  The Commissioner contends that even if the ALJ failed to recognize that Black has Posterior Capsular Opacification ("PCO")[1], Black failed to present objective evidence that the condition impacted her visual acuity and sensitivity.  The Commissioner further contends that the presence of PCO alone is not proof that the impairment is severe within the meaning of the regulations.  The Commissioner further contends that the ALJ considered all of her medically determinable eye impairments including blindness, glaucoma, high blood pressure, and diabetes.

The record shows that the ALJ noted that Black was diagnosed with cataract when she went to the emergency room with a complaint of blindness.  (Tr. 152)  The ALJ noted that she underwent surgical repair of both eyes and by September 2012, which was six months later, she had improved visual acuity of 20/25 in the right eye and 20/20 in the left.  (Id.)

In reviewing the opinion, the ALJ only references Black's cataract.  He noted that Black testified during the hearing that she is able to read the newspaper and magazines.  (Id.) He noted further that she is able to see adequately with her glasses. (Id.)

The record shows that on September 20, 2012, Black was diagnosed with early PCO.  The ophthalmology indicated that he would consider a procedure if it becomes worse.  He noted that she was doing well.  (Tr. 608)  There is no evidence in the record that PCO was significantly impacting her visual acuity or sensitivity.  (Id.)

The medical evidence also indicates that she was diagnosed with Grade II Retinopathy which comprises marked generalized narrowing and focal attenuation of arterioles associated

---

[1]Posterior Capsule Opacification (PCO) is a fairly common complication of cataract surgery. Sometimes you can develop a thickening of the back (posterior) of the lens capsule which holds your artificial lens in place. This thickening of the capsule causes your vision to become cloudy.

with deflection of veins at arteriovenous crossings.[2]  At this stage, a ridge rises up from the retina as a result of the growth of the abnormal vessels.[3]

The medical evidence also shows that Black was diagnosed with early stage macular degeneration. There is however no evidence that her vision was impacted and she was instructed to return to the Ophthalmology Clinic in four to six months. (Tr. 608).

The Court finds that the ALJ did not consider all of her vision impairments.  It is also clear that Black did not identify any of the three additional impairments and indicated by her testimony that her vision had improved.  Further, while the conditions are noted in the record there is no indication of any functional limitation that would render either of the conditions severe.  Even though the ALJ did not mention these conditions in the opinion, a diagnosis of an impairment or a mention of a condition in the medical records does not establish a disabling impairment.  *See Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir. 1983).  The Court further notes that the medical evidence indicates that each of these conditions were in the early stages of development therefore there is no evidence suggesting that requiring an ophthalmologist consult would result in evidence of limitation.  The Court is of the opinion that no additional examination was warranted and the record was fully developed.  Therefore, the ALJ's finding regarding the Black's visual impairment is based upon substantial evidence.

---

[2] RPC, *Grading of Hypertensive Retinopathys*, https://rpcround.wordpress.com/2012/07/26/grading-of-hypertensive-retinopathy/ (last visited February 18, 2016).

[3] Kate Moss, *Texas School for the Blind and Visually Impaired*, http://www.tsbvi.edu/seehear/winter98/rop.htm (last visited February 18, 2016).

### C. Whether substantial evidence supports the ALJ's credibility and residual functional capacity finding

Black also contends that because there is no opinion from Dr. David Allen, who is Black's treating podiatrist, or any evidence about why he refused to complete welfare paperwork to excuse Black from working, the ALJ should have contacted Dr. Allen.  Black contends that it was unreasonable for the ALJ to find that Dr. Allen's refusal to complete the form suggests that the claimant's assessment of her functioning is in stark contrast to her treating source's opinion. Black also contends that the ALJ erred because he found that Black was less limited because of her smoking.

 Black further contends that the ALJ erred because the record establishes that her impairments caused chronic back pain that would interfere with her ability to sit as well as to concentrate and persist at work. (Rec. Doc. 12)  She also contends that the ALJ failed to obtain any testimony about sitting which would have revealed that she cannot stand or walk for long and must take breaks to sit after she lies in the bed in her bedroom where most of her time is spent. (Id.)

The Commissioner contends that the ALJ carefully considered the entire record and  her other medical limitations resulted in limitation in standing and walking and that there is no support that pain interferes with her ability to sit and she did not identify a sitting restriction in her functional report. (Rec. Doc. 13, p. 14) Regarding Dr. Allen's refusal to fill out paperwork for Black to submit to the welfare office, the Commissioner contends that Black failed to provide an explanation or offer insight for his refusal. The Commissioner further contends the ALJ's decision is based upon substantial evidence because he made a credibility assessment noting that her resistance to treatment and continued smoking placed her at risk for her cardiac impairment.

When an ALJ does not find an individual disabled based on objective medical evidence establishing the existence of a medical impairment that could reasonably be expected to cause the claimant's symptoms, the ALJ must consider all evidence of record to determine whether the intensity, persistence, and functionally limiting effects of the claimant's symptoms, such as pain is greater than shown by the objective evidence alone. Section 404.1529(c). Further, an ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record. *Foster v. Astrue*, 277 Fed. Appx. 462 (5th Cir. 2008). Credibility determinations are generally entitled to great deference. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000); *see Gonzales v. Astrue*, 231 Fed. Appx. 322 (5th Cir. 2007) (adverse credibility determination made by an ALJ with respect to claimant seeking social security disability benefits was supported by inconsistencies in claimant's testimony and between claimant's testimony and documentary evidence).

First, Black complains that while the ALJ relied upon the treatment records of Dr. Allen, her treating podiatrist, which contained evidence that he refused to sign a welfare form excusing her from working as evidence that she was functioning better than she otherwise indicated. Black complains that the ALJ should have requested a medical opinion or explanation from him as to why he refused to sign the form.

Title 20 C.F.R. 404.1520(b)(C)(1) provides where the evidence is consistent but there is insufficient evidence to determine whether the claimant is disabled, or if after weighing the evidence the ALJ determines that he could not reach a conclusion about whether the claimant is disabled, he may re-contact the treating physician. In this case, the ALJ considered Dr. Allen's refusal to complete paper work from the welfare office that would have excused her from work. In considering this information, he concluded that Black's assessment of her ability to function

was not severe. The Court finds that consideration of this evidence was reasonable. The ALJ evaluated the evidence of record and made a credibility assessment and there was no obligation for him to re-contact Black's treating physician.

Next, Black complains that the ALJ erred when he concluded that she was not fully credible and that she would be less limited if she did not smoke despite her more aggressive treatment. The Court finds that the evidence showed that Black was advised repeatedly to stop smoking. (Tr. 154, 203-204, 477, 479, 551,579, 580, 583, 586) Smoking is a known risk factor for cardiac impairment and that failing to follow the prescribed treatment supports the credibility finding. *See Kramer v. Astrue* 2009 WL 2488127, *6 (S.D.Tex. Aug. 6, 2009) (finding claimant was not disabled where she was repeatedly instructed to stop smoking, drinking and using marijuana).

Black also complains that the ALJ's finding that she was not credible because of the absence of more aggressive treatment constitutes error because she had surgeries on her legs and her eyes. In considering this assignment of err, the Court finds that it is a mischaracterization of the ALJ's finding. The ALJ actually held that his credibility assessment was not only based on the absence of more aggressive treatment, but also the medical opinions and the evidence as a whole. (Tr. 154) Further, the ALJ did not find that Black had not undergone any aggressive treatment. To the contrary, he noted that she had cataract surgery and also the extent of her peripheral neuropathy. He also proceeded to evaluate other evidence in the record as explanations for his credibility determination. The Court finds no error in his assessment in this regard.

Finally, Black complains that the ALJ should have secured her testimony about whether she could sit long enough to perform sedentary work. Black contends that her pain interferes with her ability to sit.

In reviewing the record, the Court notes that the ALJ considered the impact of her cardiovascular impairment and that it did not allow her to engage in a full range of exertional activity and limited lifting and carrying. (Tr. 155) He also found that because she had peripheral vascular disease and neuropathy she had a limitation in standing and walking. (Id.) The record shows that Black testified that she has to sit down a while before getting up and that she has to sit down a lot. (Tr. 205) She also testified that she has to lie down and that she mostly spends her time in her room. (Id.)

The ALJ indicated that he considered the medical evidence and that neither it nor Black's own testimony indicated any significant deficit in sitting. (Tr. 155) In reviewing the evidence there is no suggestion that Black had any deficits in sitting as she indicates that she spends a lot of time in her room sitting, reading the newspaper, watching a DVD, playing crossword puzzles, and coloring with her granddaughter. (Tr. 206) The medical evidence does not suggest that she was limited in sitting and nor does she mention any difficulty or limitation in doing so. The Court finds that the record was fully developed and the ALJ's RFC assessment and credibility findings are based upon substantial evidence.

**VI.    Recommendation**

Accordingly,

**IT IS RECOMMENDED** that the Administrative Law Judge's decision denying Mary Brown Black's Disability Insurance Benefits and request for Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 19th day of February 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days